Carl DUNCAN *v.* STATE of Arkansas

CR 76-114                                    541 S.W. 2d 926

Opinion delivered October 18, 1976

*Frierson, Walker, Snellgrove & Laser,* by: *Mark Ledbetter* and *David N. Laser,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Upon trial by jury the appellant was found guilty of first-degree rape and was sentenced to a 40-year prison term. Two points for reversal are argued.

First, Duncan testified in his own defense. On cross-examination the prosecutor inquired about Duncan's guilt in a number of earlier instances, this being a typical question: "In March, the 7th of 1954, in Sacramento, California, were you guilty of burglary?" Duncan denied his guilt with respect to all the offenses except a battery committed in California on July 8, 1953. Upon objection the prosecutor admitted, in chambers, that his questions were taken partly from an F.B.I. "rap sheet", but that document was not displayed to the jury.

It does not appear from the record before us that the questions were improper. An accused may be asked in good faith, on cross-examination, if he is guilty of having committed a named criminal offense, though he cannot be asked if he was indicted or accused of a crime. *Moore* v. *State,* 256 Ark. 385, 507 S.W. 2d 711 (1974); see also the American Bar Association's Standards Relating to the Prosecution Function and the Defense Function, § 5.7d (Approved Draft, 1971). Here there was no request that the F.B.I. rap sheet be made a part of the appellate record. Consequently, we have no way of determining whether it contained enough information about the various asserted offenses to justify a good faith inquiry about Duncan's guilt. We do not imply that a mere showing that Duncan had been arrested 20 years earlier in another state upon a certain charge would be adequate information to form the basis for such a question.

It is also argued that the supposed offenses were too remote in time to have any bearing upon Duncan's credibility. Our cases have not been completely harmonious upon this issue of remoteness. We do not explore the matter, however, because the judgment must be reversed upon another ground. At the retrial the newly adopted Uniform Rules of Evidence will be in force, because new procedural statutes ordinarily apply to pending cases. *DeLong* v. *Green,* 229 Ark. 100, 313 S.W. 2d 370 (1958). Rules 608 and 609 make changes in the law with regard to proof of specific instances of prior conduct on the part of the witness and with regard to

prior convictions. Ark. Stat. Ann. § 28-1001, Rules 608 and 609, effective July 1, 1976. With the limited information supplied by this record about Duncan's earlier conduct or convictions, we are not in a position to pass upon the effect of the new rules in this case.

Secondly, a reversal is sought on the basis of a juror's having read a newspaper account that was published on the morning of the second day of the trial. The story, which appeared in a Jonesboro newspaper (where the case was being tried), contained this statement: "During a lengthy cross examination, Burnett read from a three page Federal Bureau of Investigation rap sheet listing Duncan's arrests dating back to 1953." When the issue was raised upon a resumption of the trial, one juror admitted that he had read the article (although the jurors had been instructed not to read newspaper reports of the trial). In response to questions by the court — questions that were understandably very leading — the juror said that he could put the newspaper account entirely out of his mind and not be influenced by it in any manner. The defense motion for a mistrial was overruled.

The motion should have been granted, especially in view of the earlier protracted cross-examination based upon the rap sheet. The State, in arguing that the court's ruling was right, relies upon our holding in *Howell* v. *State*, 220 Ark. 278, 247 S.W. 2d 952 (1952). It does not clearly appear from that opinion that the newspaper accounts contained any information not already disclosed by the testimony in the case. Here, to the contrary, the press report described a three-page F.B.I. rap sheet, the existence of which had not been made known to the jury. In *Shroeder* v. *Johnson*, 234 Ark. 443, 352 S.W. 2d 570 (1962), such a rap sheet was mentioned and displayed during the testimony of a witness, though it was not examined by the jury. The trial judge pointedly and positively instructed the jury to disregard the rap sheet. We nevertheless granted a new trial, because we could not say with certainty that the possibility of prejudice had been removed. Here the necessity for a new trial is even more clear. Hardly any juror, after having admittedly disobeyed the judge's instructions not to read press accounts of the trial, would confess even a possibility of being influenced by the consequences of his own misconduct. He might very well think that such an admission on his part

would result in his being charged with contempt of court. In the circumstances we cannot say with assurance that the appellant was not prejudiced by the incident.

Reversed.

We agreé. HARRIS, C.J., and FOGLEMAN and JONES, JJ.